Filed 8/26/15 in re A.K. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>A.K.,<br><br>      Defendant and Appellant. | A144350<br><br>(Contra Costa County<br>Super. Ct. No. J0802028) |

Appellant A.K. (Minor) appeals from a contested dispositional order committing him to juvenile hall's Youth Offenders Treatment Program ("YOTP") after his admission to a juvenile probation violation (Welf. & Inst. Code, § 777). Minor's appointed counsel on appeal filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). We have reviewed the record independently, find no issues that require briefing, and therefore affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2008, the Contra Costa District Attorney filed an original juvenile wardship petition pursuant to Welfare and Institutions Code section 602, charging A.K. with second degree robbery. (Pen. Code, §§ 211, 212.5.) After a

1

contested jurisdictional hearing, the court sustained the petition and, at the disposition hearing on February 5, 2009, adjudged A.K. a ward of the court. The wardship had no termination date, but the maximum custody time for A.K.'s offense was five years. A.K. was placed on probation and ordered to complete five months of juvenile electronic monitoring as a condition of probation. On June 24, 2009, A.K. was arrested and detained in juvenile hall. This incident resulted in the filing of both a notice alleging a probation violation and a supplemental juvenile wardship petition.

A.K. admitted to a probation violation for being away from home without his probation officer's authorization and testing positive for THC on two occasions, and also admitted to a misdemeanor violation of Penal Code section 496, subdivision (a) (receiving stolen property) as alleged in the supplemental wardship petition. At disposition, A.K. was committed to the Orin Allen Youth Rehabilitation Facility (OAYRF) for a four-month program, arriving at OAYRF on August 25, 2009. On September 15, 2009, the court added 30 days to A.K.'s program length for a probation violation stemming from a physical altercation between A.K. and another ward. A.K. was released into his father's custody on January 20, 2010 and placed on parole, completing his parole on April 14, 2010. A.K.'s prior grant of probation remained intact.

After leaving OAYRF in January 2010, A.K. did well for several months, but then began to have problems again, starting in September 2010, when he was sent home from school for "gang talk." A.K. was suspended in January 2011 for cutting class. At the time, A.K. was failing several subjects at school, including geometry, English, geology, and biology. The school suspension, combined with A.K.'s failure to return to his father's home and to see his probation officer, triggered yet another notice of probation violation. A.K. admitted the violation and was ordered to do 30 days of electronic monitoring and 15 hours of community service.

A.K. was committed to OAYRF two additional times for completion of six-month programs. The second commitment was ordered in June 2011 after A.K. entered an admission to a charge of misdemeanor possession of a firearm (former Pen. Code

§ 12101, subdivision (a)(1)). A.K.'s third commitment to OAYRF occurred in June of 2012 after multiple probation violations relating to his failure to comply with the home supervision and juvenile electronic monitoring conditions of his probation.

A second supplemental juvenile wardship petition was filed in November 2013, alleging a violation of resisting arrest (Pen. Code § 148, subd. (a)(1)) that occurred when a police officer attempted to pick A.K. up on an outstanding bench warrant. After A.K.'s release on home monitoring during the pendency of the new petition—he was 17 years of age at this point—he was shot and seriously wounded. The second supplemental petition was sustained, and A.K. was ordered placed at the Courage to Change program in March 2014. A.K. was able to complete high school in that program despite his previous poor academic and disciplinary record at school. A.K. left the Courage to Change program on December 4, 2014, because he had obtained his high school diploma and had reached the age of 18. On December 16, 2014, he took a drug test at the probation department that tested positive for THC; A.K. admitted he had consumed a brownie containing marijuana.

On January 15, 2015, A.K. admitted a probation violation based on the positive drug test. At the disposition hearing several weeks later, A.K.'s counsel requested that the court suspend disposition to allow A.K. to do the DEUCE program in county jail where he was housed and then terminate his juvenile probation as unsuccessful after completion of the program. However, the probation department classified A.K.'s risk of reoffending as high, and determined that A.K. would benefit from "Environmental Structure (ES) supervision strategy." The probation department recommended that this strategy be carried out by placement in the Youthful Offender Treatment Program (YOTP), noting that A.K. was "unsuitable" for other programs or foster care due to his "level of delinquency, his failure to take any responsibility for his behavior, his age, and graduation status."

At the disposition hearing, the probation department also pointed out that if A.K. ultimately completed the YOTP program successfully, he could terminate probation

3

successfully and apply to have his record sealed.  If the court followed the recommendation of A.K.'s attorney and allowed A.K. to complete the DEUCE program in county jail with a termination of juvenile probation as unsuccessful, the probation department noted, it would be "basically impossible" for A.K. to have his record sealed. After hearing from A.K. directly, who reiterated his wish to remain in county jail rather than be put in a juvenile placement, the court announced that it was going to follow the probation department's recommendation of placement at YOTP, explaining to A.K., "I appreciate what you said.  Believe me.  I hear you.  But it's my job to do what I think is best because . . . it's not to punish you.  This is what I think is best for you."

A.K. filed a timely notice of appeal.

## II.  DISCUSSION

A.K.'s appointed counsel on appeal has asked that we undertake the full record review required by *Wende*, *supra*, 25 Cal.3d 436.  Counsel advised A.K. that a *Wende* brief would be filed and that he could file a supplemental brief of his own within 30 days, but no such brief was filed.

Having conducted the required review, we note that A.K. was represented by counsel at all critical stages and that he was advised of his rights before his admissions were accepted.  The disposition was lawful, as there is ample support in the record for a placement at YOTP based on A.K.'s extensive history in the juvenile justice system and his apparent need for a program that provided a structured environment.  We note that several of A.K.'s probation violations occurred shortly after returning to a less structured environment (home) from an out-of-home program placement.  The record indicates that A.K. was unable or unwilling to comply with applicable probation conditions when he was residing at home with either of his parents, and therefore an in-home or foster care placement was clearly not an option.  The fact that A.K. had reached the age of majority created an additional complication because this caused him to be ineligible for alternative programs.  The judge even explained that he was placing A.K. at YOTP because he thought it was "what [was] best" for him.  Indulging all reasonable inferences supporting

4

the court's decision, the record demonstrates that the placement at YOTP would provide a probable benefit to A.K. and that less restrictive alternatives would be either inappropriate or ineffective. (See *In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) We conclude, therefore, that the court was well within its discretion to follow probation's recommendation and order A.K. placed in YOTP. We find no procedural irregularities or other issues that would merit briefing.

### III. DISPOSITION

The disposition order is affirmed.

_____
Streeter, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.